527 So.2d 1184 (1988)
Joseph Jimmy COMEAUX, Individually and on Behalf of his Minor Daughter, Jamie Marie Comeaux, and Sally Montgomery Comeaux, Plaintiffs-Appellees,
v.
Marvin R. POINDEXTER, Southern Instruments, Inc., Jacob Engineering Co., Jacobs Engineering Group, Inc., and Hartford Insurance Company, Defendants-Appellants.
No. 87-515.
Court of Appeal of Louisiana, Third Circuit.
June 22, 1988.
*1185 Terry E. Theriot, Lafayette, for plaintiffs/appellees.
Jones, Tete, Nolen, Hanchey, Swift & Spears, Charles N. Harper, Lake Charles, for defendants/appellants.
Before GUIDRY, FORET and LABORDE, JJ.
GUIDRY, Judge.
Joseph J. Comeaux, individually and on behalf of his minor daughter, Jamie M. Comeaux, and his wife, Sally M. Comeaux, filed this suit for damages allegedly resulting from an automobile accident which occurred on December 13, 1983 when an automobile, occupied by Rose Brown[1] and Jamie Comeaux, and driven by Sally Comeaux was struck by a pickup truck driven by Marvin R. Poindexter. On November 28, 1984, plaintiffs filed this suit against Poindexter; Poindexter's alleged employers, Southern Instruments, Inc., Jacobs Engineering Company, and Jacobs Engineering Group, Inc.; and, their insurer, Hartford Accident and Indemnity Company. On December 26, 1986, three years following the accident, plaintiff, Joseph Comeaux, filed a supplemental and amending petition seeking damages for loss of consortium. After a trial on the merits, the trial court concluded that the accident was caused solely by the negligence of Poindexter and rendered judgment in favor of plaintiffs as follows:
1. General damages to Sally M. Comeaux in the amount of $40,000.00;
2. Future medical expenses for Sally M. Comeaux in the amount of $10,000.00;
3. Damages to Joseph J. Comeaux for loss of consortium in the amount of $15,000.00; and,

*1186 4. General damages to the minor child, Jamie M. Comeaux, in the amount of $250.00.
Plaintiffs were also awarded past medical expenses and expert witness fees. Defendants appealed. After appeal, defendants filed an exception of prescription as to plaintiff's, Joseph Comeaux's, claim for loss of consortium. Plaintiffs answered the appeal seeking an increase in the award of general damages to Sally Comeaux.

FACTS
On December 13, 1983, Marvin R. Poindexter, an employee of Southern Instruments, Inc., was operating a 1979 GMC pickup truck in a northerly direction on Trousdale Road in Calcasieu Parish. Poindexter ran a stop sign at the intersection of Trousdale Road and Old Spanish Trail colliding into a 1975 Toyota Corolla which was being driven by Sally Comeaux east on Old Spanish Trail. Sally Comeaux's minor daughter, Jamie Comeaux, and Rose Brown were passengers in the Comeaux automobile. At trial, it was stipulated that the vehicle driven by Poindexter was owned by Southern Instruments, Inc. and both Poindexter and the vehicle were insured by Hartford Accident and Indemnity Company.
As a result of the accident, Sally Comeaux allegedly suffered a minor cervical strain and severe psychological problems. Jamie Comeaux allegedly sustained a minor contusion and anxiety because of the accident. Additionally, Joseph Comeaux allegedly suffered a loss of consortium due to the neurotic condition of his wife which manifested itself after the accident.
On appeal, defendants do not question the trial court's determination as to liability but urge the following as error:
1. The trial court erred in awarding plaintiff, Sally Comeaux, $40,000.00 in general damages.
2. The trial court erred when it did not raise an adverse presumption against plaintiffs as a result of their failing to call several treating physicians as witnesses.
3. The trial court erred in awarding certain past and future medical expenses to plaintiff, Sally Comeaux.
4. The trial court erred in awarding plaintiff, Joseph Comeaux, damages for loss of consortium.

QUANTUM
Defendants first urge that the award of $40,000.00 in general damages by the trial court is excessive. We disagree.
The general rule in negligence actions is that plaintiff bears the burden of proving the causal connection between the accident and the injuries claimed by a preponderance of the evidence. Coleman v. Victor, 326 So.2d 344 (La.1976). However, "due to the nebulous character of `traumatic neurosis', courts must proceed with utmost caution and scrutinize carefully evidence in support of such a claim". Boutte v. Mudd Separators, Inc., 236 So.2d 906 (La.App. 3rd Cir.1970), writ denied, 256 La. 894, 240 So.2d 231 (1970), at 911. See also Griffith v. Bodden, 273 So.2d 609, 615 (La.App. 1st Cir.1973), writ denied, 277 So.2d 448 (La. 1973).
The record reflects that plaintiff, on the night of the accident, presented herself at the emergency room of West Cal-Cam Hospital in Sulphur complaining of pain in her upper neck radiating into her shoulder which exacerbated with movement. The following day she was treated by Dr. Neil S. Rogers, a Lake Charles chiropractor, who treated her from December 14, 1983 to January 4, 1984. He elicited initial complaints of pain in her neck, left shoulder, upper arm, mid back and lower back with both ears feeling as though she had fluid in them. He diagnosed a nerve root insult which he attributed to the accident of December 13, 1983.
During this period, Mrs. Comeaux was also seen by Dr. John F. Raggio, a neurosurgeon in Lake Charles. Dr. Raggio first saw Mrs. Comeaux on December 21, 1983 after which he followed her through January 27, 1984. Dr. Raggio diagnosed that she was suffering from a mild cervical strain which he felt was caused by the accident. However, of extreme importance *1187 is the fact that Dr. Raggio noted that during the period of time he saw her, she was developing anger, depression and emotional problems. He treated her with therapy and anti-depressants for her emotional problems. Dr. Raggio then referred Mrs. Comeaux to Dr. Lynn E. Foret, an orthopaedic surgeon, and to Dr. P. Keith Nabours, a psychiatrist, for further care. Dr. Lynn Foret admitted Mrs. Comeaux to the hospital on February 2, 1984 with neck and back problems, accompanied by blackout spells. Mrs. Comeaux's physical examination was normal. However, he diagnosed a mild cervical strain with low back pain and severe depression. Because of this depression, Dr. P. Keith Nabours, a psychiatrist, was called in.
Dr. Nabours saw and treated plaintiff from February 8, 1984 through September 29, 1986. Mrs. Comeaux's initial complaints were of neck, shoulder, head problems and depression with no prior history of physical or mental problems. Dr. Nabour's initial diagnosis, which was later confirmed by subsequent visits and testing, was: (1) a major depression with melancholia, first episode; (2) characteristics of a histrionic personality; and, (3) severe susceptibility to psycho-social stressers (conversion reaction), such as the accident of December 1983, with adaptive functioning prior to the accident being very good. The doctor concluded that she had a quiescent instability that was aggravated by the accident of December 13, 1983 and which caused characterological problems and depression. This condition manifested itself by Mrs. Comeaux demonstrating an aggravating twisting motion of her neck, a robot like walk (parkinsonian-type symptoms), loud burping in public, twitching of the eyebrows, and refusal to eat and sleep. Her condition deteriorated to a point in October, 1985 that Dr. Nabours had psychological tests run by Dr. Jerry Whiteman. Dr. Whiteman diagnosed Mrs. Comeaux as suffering from a dis-sociative disorder.
On October 31, 1985, Dr. Nabours had Mrs. Comeaux admitted to Central Louisiana State Hospital. She was treated at the state mental hospital from October 31, 1985 through November 13, 1985 with a provisional diagnosis of atypical psychosis (atypical meaning not classifiable). The final diagnosis was atypical anxiety disorder with provisional episodic alcohol abuse.
Dr. Nabours next examined Mrs. Comeaux on September 29, 1986. He found her to be very defensive and exhibiting hints of anger but refusing to express anger. She was also suffering from a loud, showy burping manifestation. At this time, Dr. Nabours felt that she had strong elements of a histrionic personality disorder. His conclusion, at the time, was that Mrs. Comeaux was having a conversion disorder manifested by twitching, burping and a Holy Ghost delusion. Secondly, Dr. Nabours felt that Mrs. Comeaux had a mixed personality disorder which was rendered symptomatic by the accident, which, in his words, was really an illness which was interfering with her life, social, interpersonal and business relationships. As of the last time he saw her in 1986, he felt that this condition, which was aggravated by the accident, was still persisting and still existed. Lastly, Dr. Nabours opined that Mrs. Comeaux was suffering from severe depression as a result of the accident and there is no cure for the characterological disorder which manifested itself after the accident.
A number of people who knew Mrs. Comeaux for many years prior to the accident testified at trial. Dr. Jean Sallye Toniette, plaintiff's OB-GYN physician who had known Mrs. Comeaux since January, 1969, stated that, prior to the accident, Mrs. Comeaux had exhibited no prior mental or emotional problems. Laura Bernard, who knew Sally Comeaux for some 20 years, testified that this emotional and mental condition, the burping, twitching of the head, etc. had not shown itself before the accident but was present immediately thereafter. Mrs. Ethel White, the manager of the West Lake Cafeteria, who knew Sally Comeaux for many years, stated that Mrs. Comeaux appeared to be normal until this accident occurred. Thereafter, Mrs. Comeaux's condition deteriorated to the point of becoming so emotional at church *1188 that she had to be physically removed from the premises. Like testimony was elicited from Joseph Jimmy Comeaux.
In sum, the unrebutted medical and lay testimony establishes that the mental condition that Sally Comeaux suffers from was brought about by the accident. Additionally, as a result of the accident, Mrs. Comeaux suffered a mild cervical sprain with low back pain which cleared up satisfactorily. In our view, an award of $40,000.00 in general damages is neither excessive nor inadequate. Finding no abuse of the trial court's great discretion, we will not disturb the award.

ADVERSE PRESUMPTION
Defendants urge that the trial court erred when it failed to consider adverse to plaintiffs the fact that plaintiffs failed to call several treating physicians as witnesses. We find no merit in this contention.
In Boutte v. Mudd Separators, Inc., supra, at 911, we stated the following well established jurisprudential rule:
"In Evers v. State Farm Mutual Automobile Insurance Company, 187 So.2d 217 ([La.App.] 3rd Cir.1966) we stated the rule that although a presumption arises that the testimony of doctors who saw the plaintiff and were not called by him to testify would be unfavorable, such a presumption is merely a factor to be considered along with the other evidence in determining the true facts. The presumption alone is not sufficient to outweigh or overcome the positive testimony of the other physicians who did testify."
In the instant case, the treating physicians referred to by defendants each saw plaintiff on only one occasion. The record reflects that the positive testimony of a qualified psychiatrist, Dr. P. Keith Nabours, who treated Sally Comeaux over a period of two years, as well as the lay testimony support plaintiff's claim of severe psychological problems resulting from the accident. Their uncontradicted testimony was sufficient to rebut the adverse presumption urged by defendants.

PAST AND FUTURE MEDICAL EXPENSES
Defendants next urge that the trial court erroneously awarded certain past and future medical expenses to plaintiff, Sally Comeaux. Specifically, defendants dispute the award for the following past medical expenses:
1. the award of $461.00 to Dr. Nabours for treatment from 2/8/84 to 9/29/86;
2. the award of $21.00 for expenses incurred on 2/8/85 at the Pathology Lab;
3. the award of $50.00 for expenses incurred for treatment by Dr. Ambrister on 2/15/84;
4. the award of $995.00 for expenses incurred 2/21/84-2/23/84 at the Kelsey-Sebold Clinic;
5. the award of $75.00 for services provided by Jerry Whitman, psychologist on 10/14/85;
6. the award of $125.00 to Dr. Fayez Shamieh; and,
7. the award of $125.00 to Dr. Keith DeSonier.
At trial, there was a stipulation to the medical bills by both parties subject only to an objection of relevancy. A thorough review of the record indicates there is sufficient evidence to support a finding that these claims are proper medical expenses incurred as a result of the December 1983 accident. Although there was no specific testimony elicited regarding each item of medical expense to which defendants object, there is sufficient proof in the record to establish a sufficient nexus between the accident and the medical services provided. Further, the time frame in which plaintiff received these services corroborates the relevancy of these expenses. We also note that Hartford paid the bills of Drs. Shamieh and DeSonier without question. Accordingly, we will affirm the award of these items as past medical expenses.
With respect to damages for future medical expenses, Dr. Nabours testified that plaintiff is going to need psychiatric treatment at a cost of $1,000.00 to $1,500.00 per year until her mid to late 50s. In our view, considering that plaintiff was *1189 35 years old at the time of the accident, an award of $10,000.00 for future medical expenses was proper.

LOSS OF CONSORTIUM
Finally, defendants appeal the amount of the award for loss of consortium. Plaintiff, Joseph Comeaux, testified that prior to the accident his wife was extremely active but post accident, she became lethargic and was a completely different person. He testified that after the accident his wife lacked any interest in sex and their sex life had ceased completely. Although there was some evidence of marital discord prior to the accident, such discord was not out of the ordinary and did not result in any permanent unhappiness nor threaten the existence of their marriage. The record supports the trial court's determination of loss of consortium and no abuse of discretion in the trial judge's award of $15,000.00 in damages to plaintiff, Joseph Comeaux.
Defendants, via an exception, raise for the first time on appeal, the issue of whether Joseph Comeaux's claim for loss of consortium has prescribed. Specifically, defendants contend that the amending and supplemental petition seeking damages for loss of consortium filed by Joseph Comeaux on December 26, 1986, does not relate back to the original demand filed November 28, 1984 and, therefore, his claim for loss of consortium is prescribed. We disagree and overrule defendants' exception of prescription.
Plaintiff, Joseph Jimmy Comeaux, timely filed the original petition in this matter on November 28, 1984, both individually and on behalf of his minor daughter, Jamie Marie Comeaux. Originally, Joseph Comeaux, in his individual capacity, stated a cause of action for recovery of property damages. In his later amended petition, Joseph Comeaux urged a separate cause of action for loss of consortium. Under these circumstances, we believe that the Louisiana Supreme Court's decision in Gunter v. Plauche, 439 So.2d 437 (La.1983), is dispositive of the issue presented. In Gunter, plaintiff originally timely filed a suit for medical malpractice. He later amended his petition to urge as an additional cause of action lack of informed consent. Defendant filed an exception of prescription urging that the amending petition, which stated an entirely different cause of action, was prescribed in that the amending petition could not be said to relate back to the date of filing of the original petition. The trial court sustained the exception of prescription and the appellate court affirmed. In overruling the exception of prescription and in support of its decision to permit the relation back of plaintiff's amending petition to the originally filed petition,[2] our Supreme Court in Gunter, supra, at pages 440 and 441, stated:
"It is well established that art. 1153 permits amendment despite technical prescriptive bars where the original pleading gives fair notice of the general fact situation out of which the amended claim arises. Baker v. Payne and Keller of Louisiana, Inc., 390 So.2d 1272 (La.1980). `Where there is some factual connexity between the original and amended assertions, together with some identity of interest between the original and the supplemental party, amendment should be allowed.' Baker, 390 So.2d at 1275.
. . . . .
"Article 1153 requires only that the amending petition's thrust factually relate to the conduct, transaction or occurrence originally alleged. While the original petition did not mention lack of informed consent, the factual events during June 1976 of the consultations and defendant's advising plaintiff that surgery was necessary were explicitly set forth. The essence of interruption of prescription by suit is notice. Here, defendant *1190 had actual notice that judicial relief was being sought arising from that general factual situation of defendant's June 1977 conduct, and he thus was put on notice that his evidence concerning it should be collected and preserved. Baker v. Payne and Keller of Louisiana, Inc., supra; A. Tate, Amendment of Pleadings in Louisiana, 43 Tul.L.Rev. 211 (1969). Both causes of action arose out of the conduct, transaction, or occurrence set forth in the original petition. Plaintiff will not be held to a burden of separating out in his initial pleading the defendant's actions during that month's medical service merely because two theories of recovery are possible out of that factual setting. The amending petition did not elaborate at all on the factual setting, and no challenge to its sufficiency was made; the factual allegations made originally met the notice requirement to defendant under art. 1153. The transaction or occurrence giving rise to the demand or object of the suit remained unchanged by the amendment, and, even if the state of facts which constitute the defendant's wrong differ enough so that two causes of action exist, the facts of the transaction which created both duties is similar enough to support a relation back of the amending petition under art. 1153. See Trahan v. Liberty Mutual Insurance Company, 314 So.2d 350 (La.1975); Federal Insurance Company v. Insurance Company of North America, 262 La. 509, 263 So. 2d 871 (1972)."
In the instant case, the parties involved in both the original and amending petitions are identical. The conduct or occurrence giving rise to the original demand or object of the suit, i.e., the automobile accident between Sally M. Comeaux and Marvin R. Poindexter, remains unchanged by the amending petition. The mental and physical injuries sustained by Sally M. Comeaux in the accident bear a sufficient nexus to the damages for loss of consortium claimed by Joseph Comeaux. Accordingly, we hold that the claim presented in Joseph Comeaux's amending petition arose out of the same occurrence, i.e., the automobile accident, so as to relate back to the date of the filing of the original petition. For these reasons, we overrule the exception of prescription. Cf. Poirier v. Browning-Ferris Industries, 517 So.2d 998 (La.App. 3rd Cir. 1987), writ denied, 519 So.2d 105 (La.1987). So also Raziano v. Lincoln Property Company et al, consolidated with Reliance Insurance Company v. Lincoln Property Company et al, 520 So.2d 1213 (La.App. 5th Cir.1988).
For the above and foregoing reasons, the judgment of the trial court is affirmed. Appellants are cast with all costs of this appeal.
AFFIRMED.
NOTES
[1] Rose Brown is not a party to this law suit.
[2] The relation back of amendments to the original petition is allowed under La.C.C.P. art. 1153, which reads as follows:

"When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading."