LOTTINGER, Judge.
This is a “slip and fall” case, wherein the plaintiff alleges that she slipped on a piece of foreign material in the produce section of the defendant’s store. From a judgment in favor of the defendant and dismissing the plaintiff’s suit, the plaintiff has perfected this appeal.
The record points out that Mr. and Mrs. Harper went to the defendant’s store early on the morning of January 31, 1969. Upon entering the store, the plaintiffs obtained a shopping cart and proceeded to place in the cart various items of merchandise. After completing their shopping with the *470 cart, the plaintiffs proceeded toward the front of the store in order to' check out. Before being checked out, Mrs. Harper decided to purchase a package of frozen spinach. Mr. Harper stayed with the shopping cart while Mrs. Harper walked to the frozen food section, obtained a package of frozen spinach, and then proceeded to return to her husband and the shopping cart. As Mrs. Harper walked back to the cart she passed the fresh produce section, and slipped on what she described as a piece of wilted lettuce about the size of a silver dollar. She did not see the lettuce before she fell, but claims that after she got up she scraped it off the sole of her shoe.
This slip and fall took place at approximately 10:00 in the morning. She further testified that she showed this piece of lettuce on which she had slipped and fell to Anthony Garafola, the manager of the store, and Ivan Thomas, the manager of the produce section. Both denied that they saw or were shown the piece of lettuce, or any other foreign material.
Mr. Garafola, in his testimony, gave a very vivid explanation of the process used in trimming, bagging and displaying heads of lettuce in his store. His testimony is as follows, to-wit:
“XQ Now, with particular reference to your lettuce display, how is this displayed? Or how was it displayed on that particular date?
A It is stacked and it is wrapped.
XQ Are you sure that it was wrapped on that particular date?
A I am more than positive that it was.
XQ How is this lettuce received by your store ?
A It is received in cases and it is trimmed and wrapped in the back room, then displayed on the rack, on the produce rack.
XQ In other words, you receive it in bulk, so to speak?
A We receive it in bulk and we clean it, we have to trim it first, it is trimmed in the back room in barrels.
XQ And it is wrapped?
A It is wrapped and then it is displayed out on the produce rack.
XQ And, of course, after it is wrapped in the back room it is stacked on a cart of some kind and brought to the front of the store?
A Yes.
XQ Well, then during the course of the day when your lettuce is displayed, and, of course, the people on that particular day would be handling bagged merchandise, I am talking about lettuce?
A Yes.
XQ With particular reference to lettuce, now, they would be handling a bag of lettuce?
A Bagged merchandise, yes.
XQ This is securely tied?
A It is securely tied, yes, we put the lettuce in the bag and it is twisted tightly-
XQ Now, Mr. Garafola, this — how many times a day do you put lettuce out ? Do you have any idea?
A Lettuce is a good seller, just at different times, of the day, lettuce is always cut during the day and being put out there.
XQ Now, we are still referring to this particular date on which the accident happened. Now, you would take the lettuce out of the crate, on which you received it—
A A pasteboard carton.
XQ And you would trim it,
A Trim it in the back,—
XQ When you say in the back you are talking about in the store room?
*471 A In the warehouse.
XQ And then you would bag it?
A Yes, bag it in the store room.
XQ Securely hag it?
A Yes.
XQ So that in the course of the day people who would be handling this lettuce would be handling a bagged lettuce ?
A Yes.
XQ They wouldn’t be touching the leaves at all?
A Right.”
Mr. Thomas, who was the manager of the produce section of the store, testified as follows as to the procedure used:
“XQ Now, Mr. Thomas, with particular reference to lettuce, can you tell me how it was displayed for sale on that particular morning?
A Well, to the best of my knowledge that day was just like any other day, we cleaned the lettuce in the back and we wrapped, sometimes in the back and sometimes up there at the display rack, but most generally in the back. That is, before we bring it out in the shopping area we put it in a plastic bag and we wrap it up.
XQ Now, you receive this lettuce into your store in crates, or bulk, or however it comes?
A It comes in boxes, packed 24. We have to open it, trim it, wrap and bag it and display it.
XQ Now, it is opened and trimmed in the ware room, is that not right?
A Exactly.
XQ Now, you said that most of the time it was bagged in the ware room, but sometimes it was bagged in the front of the store, is that right?
A Yes, but seldom, very seldom.
XQ Would it be possible that it would be bagged in the front of the store on this particular day?
A At that time of day, no.
XQ How about earlier that morning?
A Say a little while before the store opened, or something or another, or right about the store opening, yes, I would say that it possibly could have been bagged out in the front, but not at that time of the morning.
XQ But what about trimmed out in the store ?
A Oh, no.
XQ It would have been trimmed out in the ware room?
A Right.
XQ That which you would put on display would be fresh lettuce?
A It would be trimmed lettuce, yes sir.
XQ But there is a possibility that a portion of it earlier that morning could have been bagged in the front of the store ?
A I would say possibly before the store opened. A couple of hours before the accident.
XQ And that would be—
A Well, I think the accident was somewhere around 10:00, if I am not mistaken, give or take a little there one way or the other, but the store opens at 8:00 o’clock and that is when I was setting the time to when the lettuce was wrapped. If it was wrapped out front, it would have been around 8:00 o’clock.
XQ But in any event it was always fresh lettuce that was brought to the front of the store?
A Yes.
XQ And, of course, Mr. Thomas, we are talking about this lettuce being bagged at this particular time, is that *472 correct, so that the lettuce itself would not be touched by human hands ? I mean, aside from the person who bagged it, we are talking about customers ?
A Yes.
XQ They would not have the opportunity to touch a head of lettuce ?
A If they walked in the store, Mr. Anzalone, to shop for lettuce and they walked up to that counter, when they picked it up it is in a bag, their hand does not touch it.”
It is noted in Thomas’ testimony that he does admit the possibility that some lettuce could have been bagged in the front section of the store. He further qualified this testimony that if it would have been bagged in the front, it would have been before the store opened, which would have been approximately two hours prior to the accident.
Mr. Joseph Milazzo, an employee of the defendant’s store, testified that he had swept the exact area where the accident happened at 9:45 the morning of the accident. He verified the time, because it was shortly before he was to take a break from his duties.
Mention has been made by the defendant that Mr. Harper who is also the plaintiff in this proceeding to recover medical expenses, was in the store at the time of the accident, was called to the area where his wife fell, was there with his wife, Thomas and Garafola, and yet was not called to testify as to what he saw in the immediate area of the slip and fall. Mrs. Harper contended that there was much trash in the area where she slipped and fell. The defendant contends that the presumption must apply that if Mr. Harper had been called his testimony would not have been favorable and would not have substantiated the testimony of his wife.
The law as applicable to slip and fall cases is well settled in Louisiana and has been very clearly expressed by the Court in Peters v. Great Atlantic & Pacific Tea Company, Inc., 72 So.2d 562 (La. App. 2d Cir., 1954), as follows:
“Plaintiff’s cause of action arises from LSA-C.C. art. 2316, declaring persons are responsible for the damage occasioned by their negligence, imprudence or want of skill. Under this statute a store keeper has the responsibility to provide a safe place for his customers. He is not the insurer of their safety, however, and need only keep floors and passage ways in a reasonably safe condition for use in a manner consistent with the purpose of the premises. See: Savoy v. G. F. Poole Mortuary, Inc., La.App.1952, 60 So.2d 108; Boucher v. Paramount-Richards Theatres, Inc., La.App.1947, 30 So.2d 211; Lawson v. D. H. Holmes Co., Ltd., La.App.1941, 200 So. 163; Greeves v. S. H. Kress & Co., La. App.1940, 198 So. 171; Bartell v. Serio, La.App.1938, 180 So. 460; Bell v. Feibleman & Co., Inc., La.App.1935, 164 So. 273; Grigsby v. Morgan & Lindsey, La.App.1933, 148 So. 506; Huber v. American Drug Stores, 1932, 19 La.App. 430, 140 So. 120.
He must exercise the degree of care that would be exercised by an ordinary prudent man under similar circumstances. See: Ellington v. Walgreen Louisiana Co., Inc., La.App.1949, 38 So.2d 177; Knight v. Travelers Insurance Co., La.App.1947, 32 So.2d 508.
His liability arises only when injuries are caused by his negligence; Bishop v. F. W. Woolworth & Co., La.App.1942, 8 So.2d 701, and not as a result of an extraneous object in the store or upon the floor unless the object was dangerous and allowed to remain a source of danger for a longer period of time than that in which it should have been discovered and removed. Joynes v. Valloft & Dreaux, Inc., La.App.1941, 1 So.2d 108.
It is the settled jurisprudence of this state that the doctrine of res ipsa loqui-tur is inapplicable to a store keeper whose obligation toward his customer is the use of ordinary care to keep aisles, pas *473 sage ways, floors and walks in a reasonably safe condition, and no presumption of fault of the store keeper arises from the mere fact of injury to a customer. See: Bartell v. Serio, La.App.1938, 180 So. 460; Powell v. L. Feibleman & Co., Inc., La.App.1939, 187 So. 130; Battles v. Wellan, La.App.1940, 195 So. 663; Greeves v. S. H. Kress & Co., La.App.1940, 198 So. 171; Lawson v. D. H. Holmes Co., Ltd., La.App.1941, 200 So. 163; Joynes v. Valloft & Dreaux, Inc., La.App.1941, 1 So.2d 108; Relf v. Aetna Casualty & Surety Co., La.App.1941, 1 So.2d 345; Hays v. Maison Blanche Co., La.App.1947, 30 So.2d 225.
One who asserts an obligation for a breach of duty bears the burden of establishing it by a preponderance of the evidence except where his opponent is the most cognizant of facts necessary to decide the issue. See: Louisiana Tractor & Machinery Co. v. Henry, La.App. 1945, 24 So.2d 188; Morris v. Vining, La.App.1950, 49 So.2d 458; Commercial Union Fire Insurance Co. v. Thibodaux, La.App.1952, 60 So.2d 425.”
The Trial Court did not render written reasons for judgment, but simply dismissed the plaintiff’s suit. We must consider that the defendant’s store had an established procedure for trimming and bagging heads of lettuce in an area separate and apart from the display section, and the only time lettuce would possibly be bagged in the display area would be prior to the time the store was opened. That because lettuce was bagged and completely covered and contained in a plastic security shield, the possibility of pieces of lettuce leaves being dropped to the floor in the display area was completely minimized.
We can certainly visualize rare instances where even though many precautionary measures have been taken to avoid the possibility of lettuce on the floor of the produce section, that such could happen. In the case at bar there is no question but that this particular area of the floor had been swept shortly before the accident happened. Finally, we are confronted with the proposition that the husband was in the store, was near his wife after the fall, had the opportunity to see the condition of the area, and yet did not testify. Considering the above, we do not feel that the plaintiff carried the burden of proof in that she has not proved that the foreign matter was “placed or left in the position in which it caused the accident by the storekeeper, his agents or employees; or, if placed by someone else, the storekeeper, his agents or employees must have had real knowledge of this, or that it had remained in such position of danger for such a length of time that they would have constructive knowledge of it and failed to remove it.” LeJeune v. Hartford Accident and Indemnity Co., 136 So.2d 157, 159 (La.App. 3rd Cir., 1961).
Therefore, we find no error in the judgment of the Trial Court, and for the above and foregoing reasons affirm said judgment. All costs of this appeal to be paid by plaintiff-appellant.
Judgment affirmed.