278 So.2d 570 (1973)
Thalia Fay CARPENTER
v.
NATIONAL FOOD STORES OF LOUISIANA, INC.
No. 9337.
Court of Appeal of Louisiana, First Circuit.
May 14, 1973.
Rehearing Denied June 20, 1973.
Wm. M. Barnett, Guste, Barnett & Colomb, New Orleans, for appellant.
Paul H. Dué, Mellon, Cavanaugh & Dué, Denham Springs, for appellee.
Before LANDRY, TUCKER and PICKETT, JJ.
*571 LANDRY, Judge.
Defendant appeals a judgment awarding plaintiff damages in the sum of $2,123.69 for personal injuries and related medical expense sustained and incurred as the result of a slip and fall incident which occurred in defendant's Denham Springs, Louisiana, store on February 10, 1971. We reduce the award for special damages.
Appellant maintains the trial court erred in finding that plaintiff had established her case as required by law. Alternatively, Appellant contends the damages awarded were excessive inasmuch as plaintiff's injuries were allegedly minor.
Subject accident occurred between five and six p. m. of the date in question. Plaintiff, accompanied by her teenage son, was shopping in defendant's establishment. The accident occurred as plaintiff was pushing her shopping cart toward the checkout counter. Plaintiff allegedly slipped on a liquid she believed to be a bleach called Clorox, which substance was allegedly spilled on the floor by one of defendant's employees.
Plaintiff testified she had been in the store about 15 minutes, and upon finishing her shopping, started toward the checkout counter. When she was about 15 feet from the checkout counter, she passed by or near the shelves where bleach was displayed at which point she slipped and fell. She attempted to avoid falling by grasping her cart. The cart, however, eluded her and proceeded toward the checkout counter. She fell on her back facing toward the rear of the store. Plaintiff was stunned by the fall, but is not sure whether or not her head struck the floor. The fall injured her right knee, and caused a hematoma on her lower left leg. Her son came to her assistance almost immediately as did also a friend and acquaintance, Mrs. Andrew P. Hughes, who was standing at the checkout counter and saw plaintiff fall. While on the floor, plaintiff smelled a strong odor which she believed to be Clorox. She so concluded because of its odor, and the fact that she fell near the area where bleaches were shelved. While on the floor, she noted a shiny reflection on its surface from the spot where she fell going all the way to the end of the aisle. She described the trail of liquid as being approximately two inches wide, with no puddles, and leading uninterruptedly back to a door marked "Employees Only". She could not detect the substance on the floor while standing erect. While on the floor, she noted some of the liquid on her slacks and shoes. Later she observed the liquid had caused a bleached spot on her clothing. Plaintiff reported the incident to an employee, Huey White, who suggested she consult the manager. Plaintiff then informed the manager of the accident, and at his request, filled out an accident report form. Plaintiff conceded she did not know how long the substance had been on the floor or who caused it to be there. Because the trail of the liquid led to the door marked "Employees Only", she supposed the liquid had been spilled by an employee in some manner.
Henry Dale Carpenter, plaintiff's son, who accompanied plaintiff to the store, did not see his mother fall. He saw plaintiff just as she was getting up off the floor. He noted a skinned place on plaintiff's left leg or foot, and also observed the trail of liquid on the floor. He described the liquid as Clorox, or some other form of bleach, mainly from its characteristic odor. He also noted the stream was about four to five inches wide with occasional splattered areas about one foot wide. The liquid trail led from the spot where plaintiff fell, all the way to the rear of the store as far as he could see in the direction of the door to a storage room at the back. He noted some of the liquid on his mother's clothing in the area of the right hip. He did not know how the substance got on the floor or how long it had been there before the accident.
Plaintiff's acquaintance, Mrs. Andrew P. Hughes, was in line at the checkout counter *572 waiting to be checked out. She noted plaintiff's approach, and saw plaintiff fall facing the front of the store. When plaintiff fell, the cart plaintiff was pushing fell on top of plaintiff. Upon bending down to assist plaintiff, Mrs. Hughes noted a liquid trail reflected in the store lights. She described the substance as a tapering off trail about four to five inches wide. She also noted the substance was a clear liquid which went from one end of the store to the other. She had no idea how the substance came to be on the floor or how long it had been there. When plaintiff's son appeared, Mrs. Hughes left as she saw that plaintiff was being attended to. Prior to the accident, she was unaware of any foreign substance on the floor.
Mr. Andrew P. Hughes was standing in the checkout line beside his wife. He did not see plaintiff fall. He first noted his wife assisting plaintiff up from the floor. He went over to plaintiff, and saw a shiny stream on the floor about one inch wide. The stream ran from the spot where plaintiff fell, rearward as far as he could see in the direction of a rear storage door, but he could not tell if the substance went as far as the door. Mr. Hughes did not know from whence the substance came or who was responsible for its being on the floor.
Defendant's manager, Michael D. Recatto, explained that the store remained open daily from 8:00 A.M. to 7:00 P.M., except on Fridays when the hours were 8:00 A.M. to 8:00 P.M. Prior to each morning's opening, the floor was scrubbed with a machine which used water, and was equipped with a vacuum to remove the water so the floor would dry prior to opening. It was his custom to patrol the store daily at 10:00 A.M., 2:00 P.M. and 4:00 P.M., at which intervals the entire store was dust mopped except for the produce area which was dust mopped almost hourly. Before leaving the store at about 5:00 P.M., Recatto made a daily inspection round, following which his assistant manager, Ronald Mancuso, assumed charge for the remainder of the day. It was customary to make a final dust mopping of the store at about 6:30 P.M., in preparation for the next day's business. He was certain this procedure was followed daily and was reasonably sure it had been so done on the day of plaintiff's accident. He conceded that bleaches were shelved in the area where plaintiff fell. He also conceded that bleach is packaged in easily cut plastic containers. He further acknowledged that when such containers are cut, which usually occurs when boxes are opened with cutters to remove containers of bleach, they are usually taken to the rear of the store.
Ronald Mancuso, Assistant Manager, confirmed that plaintiff reported the accident to him, and that he directed a stock clerk, Huey White, to clean up the liquid from the floor. White reported back to him that no substance could be found on the floor. Mancuso also testified that while he was fairly close to the accident site, his attention was not attracted to the mishap. He also stated that when plaintiff reported the accident, she seemed uninjured, and her clothing appeared in normal order and condition. He confirmed Recatto's version of the daily store cleaning routine.
Huey White did not see plaintiff fall. He was summoned by Mancuso and instructed to mop the floor. He found nothing on the floor, and did not detect the odor of bleach.
Concerning liability, the parties are in agreement that a plaintiff in a slip and fall case bears the burden of proving either that the substance rendering the premises hazardous was placed or left in the position in which it caused the accident by the storekeeper or his agents or employees, or if placed by a third person, that it remained on the floor for such a period as to charge the storekeeper with constructive knowledge of its presence. Harper v. Great Atlantic & Pacific Tea Company, La.App., 257 So.2d 468; Cunningham v. *573 Southern Bell Telephone & Telegraph Company, La.App., 215 So.2d 661.
In cases of this nature, the burden of proof incumbent upon plaintiff is the same as that required in any other civil action. Such proof need only be by a preponderance of evidence. Proof by direct or circumstantial evidence is sufficient to constitute a preponderance of evidence when, taken as a whole, the evidence shows that the fact or causation sought to be established, more probably than not was the cause of the jury. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151.
Also pertinent is the rule that a shopkeeper is not the insurer of his patron's safety. Harper v. Great Atlantic & Pacific Tea Company, above.
The obvious theory of plaintiff's case is that a store employee damaged or cut a bleach container while shelving the product and carried the leaking container to the storeroom in the rear of the establishment. Therefore, according to plaintiff, since the substance was put on the floor by an employee, the length of time the liquid remained on the floor is of no consequence. The trial court did not assign written reasons for rendering judgment in plaintiff's favor. The conclusion is unescapable, however, that the lower court found the liquid was on the floor as plaintiff and her witnesses testified, and also found it was put there through some action of defendant's employees. Had not the lower court so found, it could not have decided in plaintiff's favor. Having made these factual determinations, the judgment of the trial court must stand, unless it is shown to be manifestly erroneous. Dorsey v. Couteau, La.App., 264 So.2d 800.
Although, as pointed out by Appellant, some discrepancies appear in the testimony of paintiff's witnesses, it is certain beyond doubt that the trial judge, who saw and heard the witnesses, believed plaintiff and those parties who testified on her behalf. Accepting as true the testimony offered by plaintiff, as the lower court did, we cannot say that the trial court manifestly erred in concluding the liquid on the floor was the result of some action on the part of an employee of defendant. Under the circumstances, we cannot say the trial court was guilty of any error, manifest or otherwise. In such event, the finding of the trier of fact must be sustained. Shea v. St. Paul Fire & Marine Insurance Company, La.App., 261 So.2d 684.
Concerning plaintiff's injuries, the record discloses that whereas plaintiff felt some pain and discomfort upon reaching home on the night of the accident, she tended to herself for two or three days, and first obtained medical advice on February 13, 1971, on which date she consulted Dr. Thomas C. Davis.
Dr. Davis found plaintiff complaining of a hematoma of the right knee and left lower leg. Plaintiff also related soreness and pain in both arms. Dr. Davis prescribed sedatives for the pain and muscle relaxants. On February 19, 1971, plaintiff returned somewhat improved, but still complaining of pain in the right knee. Thereafter Dr. Davis saw plaintiff almost weekly until March 22, 1971. On the third visit, Dr. Davis noted plaintiff complaining of neck pain. Investigation disclosed muscle spasm in the neck area. In addition to sedatives, Dr. Davis prescribed diathermy to relieve plaintiff's neck pains. On March 22, 1971, Dr. Davis found plaintiff asymptomatic. Dr. Davis saw plaintiff again on August 29, 1972, approximately two weeks prior to trial. On this occasion, plaintiff complained of soreness and pain in the neck. In essence, Dr. Davis diagnosed plaintiff's condition as hematoma of the right knee and left lower leg and cervical strain. On his examination of August 29, 1972, Dr. Davis was not certain that plaintiff's continued complaints of neck pain were associated with her injury.
*574 Concerning her injuries, plaintiff testified in effect that she has had problems with her neck intermittently since the accident. In addition to her visits to Dr. Davis, plaintiff contacted Dr. Melvin Robinson in March, 1972, because of trouble with her back, neck, arms and legs. Dr. Robinson referred plaintiff to Dr. Dean Moore to determine whether plaintiff's complaints of arm pain were associated with her neck problem. Moore suggested myleography which plaintiff declined upon being advised that if the myleography revealed the need for surgery, plaintiff should undergo an operation immediately. Plaintiff explained that she was not ready for surgery, and therefore refused to undergo the myleography.
The trial court awarded plaintiff special damages in the sum of $123.69. Since the total award was $2,123.69, it is obvious plaintiff was granted recovery of $2,000.00 for personal injuries. Included in plaintiff's specials was Dr. Davis's bill for $107.00, covering nine visits including that of August 29, 1972. The unitemized bill was for approximately $12.00 per visit. Also included in plaintiff's specials were two receipts for medications prescribed by Dr. Davis and purchased by plaintiff; one for $12.69, and the other for $4.00. The receipt for $4.00 was for drugs prescribed by Dr. Davis on August 29, 1972. Appellant correctly argues that the visit of August 29, 1972, and the drugs prescribed as a result thereof, have not been shown to be accident connected. We therefore reduce the special damages to the sum of $107.69.
It is settled that insofar as awards for personal injury are concerned, much discretion is vested in the trial court. In the absence of a showing of an abuse of such discretion, an Appellate Court will not disturb an award for damages for personal injuries. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149. We find no abuse of discretion in this instance.
Accordingly, the judgment of the trial court is amended to reduce the award to plaintiff from $123.69 to $107.69, and in all other respects, the judgment of the trial court is affirmed; all costs to be paid by Appellant, National Food Stores of Louisiana, Inc.
Amended and rendered.