288 So.2d 388 (1974)
George HOFFMAN et al.
v.
ALL STAR INSURANCE CORP. et al.
No. 5969.
Court of Appeal of Louisiana, Fourth Circuit.
January 8, 1974.
Rehearing Denied February 6, 1974.
Writ Refused March 15, 1974.
*389 Porteous, Toledano, Hainkel & Johnson, Geoffrey H. Longenecker, New Orleans, *390 for Scottie-Craft Boat Corp. of America and All Star Ins. Corp., defendants-appellants-appellees.
Kronlage, Dittmann & Caswell, Robert M. Caswell, New Orleans, for plaintiffs-appellees-appellants.
Pitard, Pitard & Porobil, Gregory M. Porobil, New Orleans, for Bob's Mercruiser, defendant-appellee.
Before BOUTALL and SCHOTT, JJ., and BAILES, J. Pro Tem.
SCHOTT, Judge.
Plaintiffs' suit arose out of an incident in which a boat just purchased by plaintiff Hoffman almost sank in the Gulf of Mexico because of a defect in its construction. Defendant, Scottie-Craft, was manufacturer of the boat; All Star, its liability insurer; Bob's Mercruiser, the vendor of the boat, and Lumberman's Mutual, Hoffman's insurer under a combination policy which included hull insurance. The case was tried to a jury with resulting verdicts in favor of Hoffman for $20,000; Chappetta, $2,000; Schmidt, $1,000, and Spadafora, $3,500, against Scottie-Craft and All Star. The claims against Bob's and Lumberman's Mutual were dismissed. From the judgment appeals have been taken by Scottie-Craft and its insurer as well as the four plaintiffs all with respect to the amounts awarded.
Before considering the legal issues a review of the facts is warranted. On October 16, 1971, Hoffman for the first time put his new boat into the water at Empire, Louisiana, and set out on a pleasure fishing trip accompanied by the other three plaintiffs. When the boat was 15 or 20 miles out in the Gulf in open water beyond sight of land the motor began to falter and the boat was found to be taking water. When Hoffman tried to start the bilge pump he was unable to do so because the battery had become submerged, so he then began to bail the boat out with initial assistance from Chappetta and Spadafora. Chappetta soon became seized of chest pain which he feared was symptomatic of a heart attack, whereupon he discontinued bailing and took a seat at the bow of the boat so as to balance it against the stern which was now near submerged. Schmidt from the beginning became sick to the point where he was vomiting continuously and was unable to be of any assistance in bailing. All four men were with good reason fearful that they would drown, but after about four hours of this ordeal the boat drifted within sight of an oil rig. Hoffman stripped to his underclothes, tied a rope around his waist and swam three or four hundred yards to the rig so as to save his companions and the boat. He gave dramatic testimony of his feelings just before diving into the Gulf, describing the fear he had of sharks since he had caught some 17 to 18 feet long in these waters. Upon reaching the rig he had to shimmy up a barnacle encrusted piling to reach the floor of the platform about 20 feet above the water. Shortly thereafter he gained the attention of a chartered fishing vessel in the vicinity and a radio message was sent to the Coast Guard for help. Before long a rescue vessel arrived and brought Hoffman, Chappetta, Spadafora and the disabled boat to Grand Isle, Louisiana. Schmidt chose to remain on the rig, fearing to accept transportation to shore in the Coast Guard cutter and preferring the larger chartered fishing vessel which returned him to shore some three or four hours later when its fishing trip was completed.
The jury's verdict of $20,000 in favor of Hoffman and against Scottie-Craft and All Star was reduced to a judgment but this judgment was subsequently amended following a motion for a new trial by Scottie-Craft so that it alone was cast unto Hoffman for $7,601.25, being the purchase price of the boat, while both Scottie-Craft and All Star were cast for the remaining $12,398.75 in favor of Hoffman.
In connection with the purchase price portion of the judgment, at the beginning *391 of the trial Scottie-Craft's counsel made the following statement:
"The parties have agreed, and I have agreed, to stipulate the cause of the accident in question was a latent defect in the hull of the boat resulting from a mistake in the construction of the boat on the part of Scottie-Craft Boat Corporation and my client."
Notwithstanding this stipulation, Scottie-Craft contends that its liability should be limited to the price it charged Bob's Mercruiser for the boat, namely $4,450 and not the amount which defendant paid Bob's. It also contends that the Civil Code Articles on redhibition do not apply to this situation because the boat was never returned to defendant and because there was a warranty agreement which gave to Scottie-Craft the right to either repair or replace the vessel.
In Media Pro. Consult, Inc. v. Mercedes-Benz of N.A., Inc., 262 La. 80, 262 So.2d 377, it was held that the purchaser of a defective automobile has a cause of action for the full purchase price against the distributor and manufacturer and is not relegated to an action against his immediate vendor, the dealer. It was also held that in the absence of an express waiver of the warranty of reasonable fitness for the product's intended use provided by LSA-C.C. Arts. 2475 and 2476, a purchaser cannot be deprived of same simply because of the existence of a contractual warranty on the article. As to the contention that a return of the boat was a prerequisite to Hoffman's action in redhibition, the evidence shows that after this boat was towed to Grand Isle it was taken to Bob's Mercruiser by its proprietor where it remained until the time of the trial. The boat was there inspected by representatives of the defendant and was available to defendant and its experts for this entire period. We therefore find that the boat was in fact returned to defendants through their agent, Bob's, from whom the boat was purchased in the first place. Therefore, the award to Hoffman of $7,601.25 against Scottie-Craft was supported by the evidence, was founded on sound legal principles and will not be disturbed.
On the other hand, there is considerable difficulty with the remaining $12,398.75, which was awarded to Hoffman.
Hoffman's injuries consisted of extensive, painful and ugly cuts over a great part of his body resulting from his climb up the barnacle encrusted piling. When he returned to shore peroxide was applied to the cuts causing him great pain and when he returned to his home he called his physician who prescribed a salve to be applied to his wounds. Bandages were applied by his wife. He was handicapped in his work and suffered pain and discomfort until these cuts healed. They left no scars and there is no permanent disability sought or proved in connection with them. He never saw a doctor and his actual medical expenses consisted of a $15 fee for the telephone call to the physician and $7.40 for the salve prescription.
Hoffman was the owner and operator of a "Chuck Wagon" which is a truck outfitted to sell food items to customers at jobsites, such as construction projects. These food items were actually cooked and prepared by Hoffman on the truck as in short order restaurants. For the first two days after the accident he was unable to work and for a couple of weeks thereafter he was handicapped from the full performance of his customary duties. He summed up his losses by testifying that in an average week he would net $200 but for the four weeks after the accident he was able to net only $530. In addition to this direct loss he testified that because of his inability to serve his customers fully, business competitors took some of his business; that some customers and locations were permanently lost, but that it was not possible to trace exactly how much of a loss was sustained.
*392 Hoffman contends that his verdict is well within the discretion of the jury and should not be disturbed by this Court. But alternatively he joins the other plaintiffs in contending that the verdicts were too low and should all be increased. It is therefore incumbent upon us to review the verdicts and determine whether they are excessive, inadequate or to be left undisturbed.
We are not favored with written interrogatories to the jury and consequently do not know what each verdict was intended to include. We have pleadings originally filed by plaintiffs and, in this case, the complete oral argument to the jury by all counsel which we must presume had some influence on the jury in its deliberations. In analyzing Hoffman's award it appears to include his medical expenses in the amount of $22.40 and an insurance premium covering the boat pending the outcome of this litigation in the amount of $240. It must include Hoffman's damage to or loss of numerous articles of fishing tackle and clothing, which in the closing argument his counsel suggested were worth $175. Undoubtedly Hoffman lost earnings as a result of this incident. His uncontradicted testimony was that he lost a net of $270 for the first four weeks which must be included in the verdict. While his testimony on future earnings was not corroborated by any records and while he admitted that his total earnings for the year of the incident were the same as the year before and the year after, there was no contradiction to his testimony and he obviously could not account for his losses with mathematical certainty. Therefore, the jury was entitled to exercise some discretion in arriving at the proper amount. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151, Fox v. State Farm Mutual Automobile Insurance Company, et al, La., 288 So.2d 42 (1973). In closing argument plaintiff's attorney suggested to the jury a figure of $1,000 in future earnings, so that we might presume that the jury included approximately this figure in their verdict. If this total of $1,707.40 for the aforementioned items was included in the verdict, there is no basis in fact or in law to disturb same. The balance of $10,691.35 consisted of plaintiff's loss of use of his boat, his physical injuries with attendant mental anguish, pain and suffering, and the great mental anguish and fear of the loss of his life while the ordeal was in progress.
Apparently the jury included in its award an item for the loss of the use of the boat. Plaintiff included in his petition $7,000 to cover this item and in oral argument to the jury suggested a figure of $3,200 based upon $50 a week for the sixteen months following the incident. Hoffman testified that he was not in a financial position to purchase another boat during this time, and in fact had to meet payments on the boat he had purchased. There was nothing in the trial judge's charge to the jury which would have deterred them from including this item in their verdict. And his charge did not contain the legal principles applicable to this situation.
Plaintiff makes a forceful argument to the effect that he had just purchased this boat for almost $8,000 when it was lost. For the entire period of time while this case has been pending he has been deprived of the use of the boat and cannot replace it because of limited financial resources. This argument provokes much sympathy from us but the law does not support the inclusion of such an item in the judgment. The same argument can be made in every case where a poor man's automobile is wrecked as a result of the negligence of a tortfeasor and he is required to file suit, to undergo sometimes insufferable delays in having his case brought to a final disposition and then to be relegated only to the value of the automobile at the end of the litigation when a judgment becomes final. In such cases where an automobile is lost or damaged no compensation is recoverable beyond the reasonable time that it would take for a replacement vehicle to be purchased, or for repairs to be completed. See Nelson v. Hawkins, 244 So.2d 656 (La.App., 2nd Cir. *393 1971); Barry v. United States Fidelity & Guaranty Company, 236 So.2d 229 (La. App., 3rd Cir. 1970). There is no evidence that Hoffman rented a replacement boat, nor is there evidence to show how long it would have taken Hoffman to purchase and accept delivery on a new boat, and consequently he is not entitled to the loss of the use of the boat under these circumstances.
The $10,691.35 remaining for Hoffman's fear, pain and suffering and the verdicts awarded to the other three plaintiffs now require a consideration of one of defendants' assignments of error to the effect that the trial judge erred in permitting plaintiff's counsel in oral argument to the jury to read from a reported legal decision.
This matter first came up after an introductory remark by counsel to the effect that the fear of death which Hoffman underwent was a difficult item to assess for damages, whereupon counsel said the following:
"Gentlemen, that is all I am asking because of the difficulty in setting a figure on this type of fear and mental anguish, looking for something for you to gauge yourself. I think I found one, a recent case, one similar to this one. Two barges crashed and one started sinking and two individuals swam in fear of their lives. Right out of this decision is what the Court said, if you will bear with me I will read it to you."
Thereupon counsel read verbatim from In re Sincere Navigation Corporation, D.C., 329 F.Supp. 652, at pages 657 and 658 (1971), suggesting an award of $10,000 as in the cited case. Timely objection had been made by defendant's counsel but the court permitted the reading as aforesaid with the following admonition to the jury:
"The Court will advise the jury thusly right now. The law books have thousands of cases and Mr. Caswell is choosing to read one of those cases to you. Whether that case is relevant is for you to determine. In other words, if you think that can help you to decide this case you can consider it or you can ignore it, whatever you wish."
And upon defendant's motion for a mistrial because of the reading from this case, the trial judge in denying the motion said the following:
"The law is not so clear unless we are reading different things from the same case. As a matter of fact it clearly says in both of these decisions (referring to book) that counsel can argue to the Jury law which the Court believes is applicable. I believe I told the Jury you were reading them cases from this state and if they consider that decision applicable they could consider it and if not they could ignore it."
The trial judge committed error in this connection. In Barrere v. Commercial Union Insurance Group. 195 So.2d 461 (La. App. 4th Cir. 1967) this Court was faced with the question of whether it was error for the plaintiff to be denied permission by the trial judge to read cases to the jury. This Court held that such a practice would tend to confuse rather than aid the jury because questions of law are exclusively for the Court and only questions of fact are for the jury, although counsel may argue to the jury such law as the court has ruled is applicable:
"And contrary to counsel's contention the portions of opinions which he intended to read to the jury formed no part of the law, they are concerned only with the credibility of the witness in question, and arguing to the jury such credibility cannot be attacked by the use of extracts from appellate opinions which have not been introduced in evidence and which the witness has had no opportunity to answer or explain . . . ."
Likewise, we believe that counsel's reading from Judge Rubin's opinion in the cited case had the effect of confusing the jury. What Judge Rubin awarded in the cited case for mental anguish and fear was *394 irrelevant to the instant case, and his award was by no means a reliable "gauge" for the jury. Undoubtedly the jury was further confused by the trial judge's instruction that if it found such case to be applicable it could consider it.
Nevertheless we do not find that this was reversible error and the trial judge properly denied the motion for a mistrial. In his argument with respect to the other three plaintiffs, counsel repeated the same recommendation to the jury that each one should receive $10,000 and again referred to Judge Rubin's award in the cited case. But the jury returned only $2,000 for Chappetta, $1,000 for Schmidt and $3,500 for Spadafora. This indicates that counsel's reference to the case did not have the effect of inflaming or prejudicing the jury in violation of defendants' rights.
Before concluding a discussion of the verdict in Hoffman's favor consideration will be given to the verdicts returned in favor of the other three plaintiffs. Each one lost some personal items and suffered some loss of earnings. As to Chappetta and Schmidt, they did the same type of work as Hoffman and their testimony to the effect that they lost some wages for a few days after the incident as well as some future business, while uncorroborated by any records, was sufficient to provide a basis for the jury exercising its discretion in awarding something for these items. Chappetta had only $25 of medical expenses for an examination. It disclosed that his fear that he was having a heart attack was unfounded and instead he had only a pulled muscle which required no medical treatment. Schmidt saw no doctor and suffered only the vomiting aboard the boat which has already been described. Spadafora was employed as a technician in automobile front end alignment and was handicapped in his work for a few days because of sore muscles. Like his companions, his testimony on loss of wages and earnings was weak and uncorroborated but sufficient for the jury to award something. Fox v. State Farm Automobile Insurance Co., supra.
While the Supreme Court in Fox v. State Farm Automobile Insurance Co., supra, restates the jurisprudence to the effect that a jury has much discretion in making general damage awards, we have the onerous constitutional duty to review the facts and to increase or reduce general damage awards resulting from an abuse of discretion by the trial court. LSA-Const. Art. 7, § 29.
In this case we find that there was such an abuse in that the awards to Hoffman and Spadafora are grossly excessive.
All four awards necessarily included compensation for fright, fear or mental anguish while the ordeal was in progress, which is legally compensable. Reeza v. Cziffer, 186 So.2d 174 (La.App. 4th Cir. 1966).
In Hoffman's case he was the host, he dove into the Gulf to save the others and his own and his wife's testimony were to the effect that for two days after the incident his sleep was disturbed by the memory of the experience. Undoubtedly the jury saw fit to award him something more for this item than the others. The fact that Spadafora received $3,500 as compared to only $2,000 for Chappetta and $1,000 for Schmidt leads to speculation that Spadafora was in some way rewarded by the jury because he performed such outstanding service to the others in continuously bailing and necessarily gets some credit for saving them. There is nothing in the record to suggest that Spadafora suffered greater mental anguish from fear than the others and in fact the opposite is true.
The only other compensable item to be included in each verdict is the physical injury with attendant pain and suffering sustained by the plaintiffs.
In Schmidt's case we find no abuse of the jury's discretion in its award of *395 some nominal amount for his hours of vomiting followed by a week and a half of stomach cramps for which he saw no doctor and took Malox. This was included in the $1,000 along with his loss of earnings, loss of personal items and fear.
In Chappetta's case, we find no abuse of discretion since his physical injuries were diagnosed to be a pulled muscle for which he took medication and from which he did not return to normal until the third or fourth week after the incident. Since his loss of earnings, loss of personal items and fear were much the same as Schmidt's the jury awarded Chappetta adequate compensation for his physical injury in the $2,000 verdict.
However, in Spadafora's case he was awarded $3,500 despite the fact that his loss of earnings, loss of personal items and fear were no more than the others and despite the fact that he saw no doctor and was back to normal in the third week after the incident. He had only stiffness and soreness of his muscles for which he took some pain pills and home heat treatments. His award of $3,500 is grossly excessive and the sum of $2,000 would fairly and justly compensate him.
Finally, in Hoffman's case while it was reasonable for the jury to award him more than the others for fear and while his injuries were far more serious than the others the award of some $10,691.35 for these items was beyond the range of discretion. He saw no doctor, his small cuts were healed within a week, his larger ones were all healed within two and one half months, he was no longer disabled after three weeks and he suffered no residuals whatsoever. Considering recent cases emanating from this Court such as Brister v. Martinez, 277 So.2d 751 (La.App., 1973); Dillman v. Allstate Insurance Company, 265 So.2d 322 (La.App., 1972) and Tudury v. Cooperative Cab Co., 265 So.2d 307 (La.App., 1972), the sum of $5,000 would fairly and justly compensate Hoffman for his fear, mental anguish, physical injuries, pain and suffering. Also see Griffith v. Bodden, 273 So.2d 609 (La.App. 1st Cir. 1973), Writ denied, La. 277 So.2d 448, and Carpenter v. National Food Stores of Louisiana, Inc., 278 So.2d 570 (La.App. 1st Cir. 1973).
Accordingly, the judgment appealed from is affirmed but is amended to the extent that the judgment in favor of George Hoffman and against Scottie-Craft Boat Corporation of America and All Star Insurance Corp. in the amount of $12,398.75 is reduced to $6,707.40, and the judgment in favor of David J. Spadafora and against Scottie-Craft Boat Corporation of America and All Star Insurance Corp. in the amount of $3,500 is reduced to $2,000. In all other respects the judgment is affirmed. The costs of this appeal are divided among Hoffman and Spadafora for one-third each and Scottie-Craft and All Star for the other.
Amended and affirmed.
JULIAN E. BAILES, Judge Pro Tem. (dissenting in part, and concurring).
It is my considered belief that an award of $1,000 for loss of future earnings to plaintiff Hoffman, if the majority's conjecture that the jury awarded $1,000 for this alleged loss because of the attorney's suggestion that such amount would be proper, is not warranted under the proof. My understanding of Fox v. State Farm Mutual Automobile Insurance Company, et al (1973), La., 288 So.2d 42, does not relieve the claimant of making proof of his claim. Admittedly, Hoffman incurred no diminution in earnings during the year of the accident as compared with the year before and the year following.
I find the majority's award to plaintiff Hoffman is excessive by $1,000.
Otherwise, I concur.