ARMSTRONG, Judge.
Plaintiff, Abbott Tours, Inc. (ATI), appeals the trial court’s imposition of sanctions disallowing it to introduce evidence of economic loss and expert testimony connected therewith. Plaintiff, John W. Abbott, appeals the trial court’s granting of a partial summary judgment dismissing his tort claim against defendant, Marriott Corporation.
In 1979 and 1983 ATI contracted with Marriott to provide hotel accommodations for a specified number of ATI’s clients during the 1979 and 1983 Sugar Bowl weekends. On each occasion Marriott did not have all of the necessary rooms available for ATI’s customers. ATI, the corporate entity with which Marriott contracted and John Abbott, individually, as ATI’s chief officer, delayed until November, 1983 before filing suit against Marriott. In the petition, ATI claimed that Marriott’s failure to provide enough hotel rooms in 1979 and 1983 caused ATI to suffer lost profits and damage to ATI’s business reputation. John Abbott, individually, claimed that after each of the 1979 and 1983 incidents, he received complaints and abuse from ATI’s customers which led to his suffering emotional and physical distress.
On March 20, 1985, Marriott served a notice of deposition and request for production of documents on ATI and Abbott. In the deposition notice, Marriott requested that ATI designate an appropriate officer to testify on the issues raised in the petition and specifically requested that ATI produce all documents which supported ATI’s claims for lost income and business reputation. A similar request was sent to Abbott individually. Mr. Abbott was de *172 posed on April 26, 1985. At that time, certain documents were produced but Abbott provided no documentation which analyzed or calculated the specific damage to reputation or profits.
Thereafter on October 17, 1985, Marriott, in an effort to have the majority of the claims dismissed, filed three exceptions. Marriott urged that all tort claims arising from the 1979 activities were prescribed. Marriott also urged dismissal of Abbott’s individual claims for failure to state a cause of action and sought dismissal of the alleged reputation damage contending that it was no more than an element of proof for lost profits.
On May 23, 1986, the trial court ruled that the tort claims for 1979 were prescribed; that ATI’s claim for damage to business reputation was subsumed within the claim for lost profits such that no separate claim for damage to business reputation could be sustained apart from the claim for lost profits; and that Abbott in his individual capacity was allowed to amend the petition to allege that the damages suffered by him were foreseeable and, thereby, at least state a cause of action. Abbott amended the petition in keeping with the court’s instruction.
Thereafter, on May 20, 1987, the trial court referred the case to a Civil District Court Commissioner for pre-trial administration and trial. On August 5, 1987, Marriott propounded six additional requests for production of documents on ATI. On September 28, 1987, ATI answered the request for production of documents by stating that the documents “have not been segregated from Abbott’s general accounting records at this time; when they are assembled, they will be forwarded to Marriott.” ATI further represented that documents to support its claims have not been assembled. As a result, Marriott filed a motion to compel production of documents which was set for December 14, 1987. On the very date of the hearing, ATI supplied additional answers which were not adequately responsive to Marriott’s requests.
Based upon the foregoing, the Commissioner, as reflected on the second page of the “Report of the Commissioner of Preliminary Hearing”, ordered the requested documents be furnished by January 15, 1988. On that date, Abbott and ATI did supplement the discovery but did not provide all documents supporting their claims against Marriott. In yet another attempt to obtain Abbott’s and ATI’s documentary support for their claim, Marriott renoticed Abbott’s deposition and requested production of supporting documents at that time.
The deposition took place on February 23, 1988. In an effort to protect Marriott’s position and to insure adequate production of documents, a subpoena was served on Abbott requiring the document production at the deposition. Despite these efforts, Abbott failed to produce the requested documents. In fact, Abbott testified that he had not even written some of the computer programs necessary to generate the documents which he intended to use to support the lost profit claim. Abbott also testified that, after he wrote the programs he would then have them reviewed by an economist, Kenneth Boudreaux, expecting Mr. Bou-dreaux to testify on those documents. As a result of these occurrences, Marriott moved for an order excluding the use of the computer information and/or excluding the testimony of Kenneth Boudreaux.
On February 25, 1988, Marriott filed a motion for partial summary judgment seeking dismissal of Abbott’s individual claim for alleged humiliation, emotional distress and mental anguish. While Abbott had amended his petition to state a cause of action, the depositions, pleadings and other evidence of record reflected that there was no genuine issue of material fact and that Marriott was entitled to judgment as a matter of law.
After oral argument on March 4, 1988, the Commissioner ruled in Marriott’s favor on both motions. The Commissioner filed a formal report recommending that Abbott’s individual claim be dismissed and prohibiting ATI from introducing in evidence documents which support its lost profits claim because ATI failed to comply with the court’s order of December 14, 1987 requiring production of all documents by January *173 15,1988. Thereafter, ATI and Abbott filed exceptions to the Commissioner’s report and Marriott filed an opposition thereto. The trial court rendered judgment on August 3,1989, dismissing ATI’s and Abbott’s exceptions to the Commissioner’s recommended judgment. ATI appeals the imposition of discovery sanctions against it and Abbott appeals the dismissal of his claim for tort damages.
DISCOVERY SANCTIONS
Article 1471 of the Louisiana Code of Civil Procedure provides the trial court with authority to impose sanctions upon a party for its failure to comply with orders compelling discovery. That article specifically authorizes an order prohibiting the disobedient party from introducing designated matters into evidence. La.C.C.P. art. 1471(2). A trial court’s imposition of sanctions for failure to comply with a discovery order and its choice of sanctions will not be reversed on appeal absent a clear showing that there was an abuse of the court’s broad discretion. Fulgham v. An Unknown Police Officer, 480 So.2d 417, 418 (La.App. 4th Cir.1985); Llorence v. Natchitoches Parish School Board, 529 So.2d 479 (La.App. 3d Cir.1988), writ denied, 532 So.2d 176 (La.1988).
ATI was to provide all documents which ATI and Abbott would rely upon at trial to support each claim against Marriott by January 15, 1988. Abbott and ATI argue that the trial court improperly imposed sanctions because there was no order directing ATI to produce expert reports by any fixed date and because such report did not exist on January 15, 1988. The fact that neither the trial court nor the Commissioner imposed discovery or witness list cut-off dates does not control this matter. What is relevant is that Marriott continuously sought discovery and a court order existed directing ATI to produce all documents upon which it would rely at trial in support of its claims against Marriott by January 15, 1988. If ATI’s argument is accepted, then the only instance in which sanctions may be imposed is when there is a pre-trial calendar or pre-trial order. In fact, the pre-trial procedure which Abbott now stresses is discretionary. La.C.C.P. Art. 1551. The Louisiana Code of Civil Procedure allows for sanctions for discovery violations even in the absence of a pre-trial order or violation thereof.
ATI also makes a mistake when it argues that the sanctions were inappropriate because the Commissioner continued the trial date and, therefore, nobody would have been prejudiced by allowing ATI more time to respond. The record reflects, and both the Commissioner and trial judge must have concluded that ATI abused discovery to the extent that the refusal to allow certain evidence was justified. In view of the fact that this dispute was in part nine years old, we do not find that the Commissioner or the trial judge was unreasonable in rejecting ATI’s eleventh hour evidentiary gambit. Nor would it have been constructive to grant ATI a continuance. ATI should not be rewarded for its procedural abuses thereby encouraging litigants to violate discovery orders because, at worst, they would suffer a postponement of the trial date. Furthermore, Marriott would be penalized by yet another delay. Neither the spirit of the discovery rules nor the jurisprudence thereunder would applaud such a result.
On February 26, 1988, Marriott eventually did receive the information that it sought. Since the trial was scheduled to begin on March 7, 1988 we agree that this was an egregious example of noncompliance with the discovery process and an appropriate case in which to impose sanctions.
THE DISMISSAL OF ABBOTT’S PERSONAL TORT CLAIM
Abbott acknowledges he was not acting in his individual and personal capacity when ATI contracted with Marriott. Abbott was acting solely as an agent of ATI. Abbott’s testimony at his April 12, 1985 deposition acknowledges that his conduct related to a commercial contract between two corporations. Moreover, when considering the motion for partial summary judgment, the Commissioner and the trial *174 judge had before them the authority of the nearly identical case of Morein v. G.J. Deville Lumber Co., 215 So.2d 208 (La.App. 3d Cir.1968).
In Morein, suit was filed by Bruce Mor-ein, individually and on behalf of his business, Morein Motor Co., Inc., against De-ville claiming Deville failed to timely complete a building. Just as Abbott does here, Bruce Morein sought damages for mental anguish, humiliation and embarrassment. The trial court dismissed Morein’s individual claim. The appellate court affirmed recognizing:
Any possible uncertainty or ambiguity as to the identity of the contracting party was dispelled by the testimony of Mr. Morein that he was acting for the corporation when he signed the contract ... Accordingly, we affirm the trial court judgment dismissing the suit. Id. at 211.
Here, as in Morein, Abbott's testimony dispels any uncertainty as to his status when ATI contracted with Marriott. ATI, not Abbott, was party to the contract. Abbott, as a corporate officer, is not entitled to recover for alleged personal injury due to alleged humiliation and embarrassment stemming from a breach of contract with ATI.
Jurisprudence emanating from this court likewise serves to bar Abbott’s claims. In Buddy’s Tastee No. 1, Inc. v. Tastee Donuts, 483 So.2d 1321 (La.App. 4th Cir.1986), writ denied, 486 So.2d 738 (La.1986), plaintiff claimed that defendant’s improper eviction of plaintiff’s business caused him psychological damage. Recognizing that a breach of contract does not give rise to a claim for mental anguish unless the primary object of the contract was psychological gratification, La.C.C. art. 1934, this court affirmed the trial court’s dismissal of plaintiff’s claim, noting that “certainly, the primary object of the lease was financial gain, not psychological gratification.” Id at 1324. As a consequence, plaintiff could not recover for his mental anguish. Similarly, ATI’s contract with Marriott was a commercial contract to supply tourists with hotel rooms. By no means does it fall within the category of contracts for psychological gratification. Marriott’s failure to have hotel rooms for ATI’s customers does not engender a claim for mental anguish on behalf of John Abbott.
The cases which Abbott cites are all distinguishable. Albritton v. McDonald, 363 So.2d 925 (La.App. 2d Cir.1978), writ denied, 366 So.2d 561 (La.1979); Hoffman v. All Star Insurance Corporation, 288 So.2d 388 (La.App. 4th Cir.1974), writ denied, 290 So.2d 909 (La.1974); Versai Management, Inc. v. Monticello Forest Products Corporation, 479 So.2d 477 (La. App. 1st Cir.1985). They fall within that narrow exception of contracts not strictly commercial in nature.
Albritton involved the sale of a quarter horse, where the seller intentionally or negligently failed to inform the buyer that the horse was infected with swamp fever. The horse subsequently infected two other horses of the buyer. The court found elements of fraud and allowed recovery under either theory of tort or redhibition. In Hoffman, the buyer of a defective boat brought an action against the boat manufacturer, its insurer and others. The court affirmed damages in tort to plaintiffs upon proof that the boat almost sank in the Gulf of Mexico as a consequence of the defect and plaintiffs sustained both emotional and physical damages in addition to the loss of the boat. The court in Versai awarded tort damages in a cause of action for timber conversion or timber trespass on real property.
The revision comments to La.C.C. article 1998 help to clarify the distinction.
A contract made for the gratification of a nonpecuniary interest means one intended to satisfy an interest of a spiritual order, such as a contract to create a work of art, or a contract to conduct scientific research, or a contract involving matters of sentimental value. In such a case, upon the obligor’s failure to perform, the obligee may recover the damages he has sustained of a nonpecu-niary — or “moral” — nature.
*175 For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.